**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Audra H., | No. CV18-8129-PCT-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Nancy A. Berryhill, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Audra H. seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security which denied her disability insurance benefits under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. For the following reasons, the Court will reverse the decision of the Administrative Law Judge ("ALJ"), and remand for additional proceedings.

**I.  Background.**

Plaintiff is a 61-year-old woman with a high-school education, and she previously worked as a front-desk clerk, phone operator, and caregiver. A.R. 44, 46-48. Plaintiff applied for disability benefits on December 6, 2013, alleging disability beginning October 23, 2013. A.R. 11. Plaintiff and a vocational expert appeared and testified at a hearing before the ALJ. A.R. 40-84. On March 15, 2017, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. A.R. 11-21. The ALJ's decision became the

Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on April 19, 2018. A.R. 1-4.

**II.     Legal Standard.**

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

**III.    The ALJ's Five-Step Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable

physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step to determine whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2016, and that she had not engaged in substantial gainful activity since October 23, 2013. A.R. 13. At step two, the ALJ found that Plaintiff had the following severe impairments: vision loss in the right eye; peripheral neuropathy; osteoarthritis of the right foot and bilateral wrists; bilateral carpal tunnel syndrome, status post release on the left; bilateral cubital tunnel syndrome; left ring finger trigger finger, status post release; and lumbar degenerative disc disease. A.R. 13. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. A.R 16.[1] At step four, the ALJ found that Plaintiff had the RFC to perform light work, and was capable of performing past relevant work as a personal attendant, front desk clerk, and casino reservation clerk. A.R. 16, 21.

---

[1] The ALJ found that Plaintiff's depressive disorder and polysubstance dependence, alone and in combination, did not cause more than a minimal limitation on her ability to perform basic mental work and were therefore not severe. A.R. 13-14. The ALJ also noted that Plaintiff had been diagnosed with obesity, migraines, urinary incontinence, hypertension, and hepatic steatosis throughout the record, but these impairments also were not severe. A.R. 15-16. Plaintiff does not appeal those findings. *See* Doc. 12 at 18-22. Nor does Plaintiff appeal findings regarding her mental work capacities. *Id.* at 7 n.7.

**IV. Analysis.**

Plaintiff argues the ALJ's decision is defective for two reasons: (1) the ALJ erred in rejecting the opinion of Plaintiff's treating physician; and (2) the ALJ rejected Plaintiff's symptom testimony without specific, clear, and convincing reasons, supported by substantial evidence. Doc. 12 at 1-2.

    **A.    Medical Opinion Evidence.**

        **1.    Legal Standard.**

A physician's opinion may be a treating source, examining source, or non-examining source. *See* 20 C.F.R. § 404.1527 (evaluating opinion evidence for claims filed before March 2017); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician is one who provides or has provided the claimant with medical treatment or evaluation, or who has an ongoing treatment relationship with the claimant. *Id.* at § 404.1527(a)(2). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

        **2.    Dr. Janikowski.**

The ALJ gave limited weight to the assessment by treating physician, Dr. Mary Janikowski. A.R. 20. Because Dr. Janikowksi is a treating source whose opinion was contradicted by consultative examining physician Dr. Tromp, the ALJ could discount her opinion only for specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

- 4 -

On July 19, 2016, Dr. Janikowski opined that Plaintiff could continuously sit for thirty minutes to an hour, and sit for three hours per day; stand and walk for thirty minutes to an hour at a time, and for two hours or less per day; frequently lift and carry five pounds, occasionally lift and carry ten pounds, and rarely lift and carry more than ten pounds; occasionally reach, and rarely stoop, squat, crawl, or climb; frequently handle, grip, or grasp; rarely push or pull controls; frequently do fingering or fine manipulation; use either foot for repetitive movements, but not both; has a moderate restriction for occupational driving, but no restrictions for unprotected heights, moving machinery, exposure to dust, fumes, gases, or marked changes in temperature and humidity; and has moderately severe limitations from pain and fatigue. Dr. Janikowski based her opinion on Plaintiff's medical records, clinical observations, lab and other diagnostics, and her knowledge of Plaintiff's presenting diseases and disorders. A.R. 1324-1326.[2]

Discrediting Dr. Janikowski's opinion, the ALJ stated:

> While I accepted the assessment that the claimant's impairments resulted in more than minimal limitations with her ability to perform work related activities[,] the limitations assessed by Dr. Janikowski appeared to rely heavily on the claimant's subjective allegations and were inconsistent with available physical examination results and review of systems, which, as discussed in this decision, routinely showed only mild to moderate findings consistent with the residual functional capacity listed in this decision.

A.R. 20. The ALJ also discredited Dr. Janikowski's assessment that Plaintiff's limitations would prevent her from sustaining long-term employment because the disability determination is reserved for the Commissioner. *Id.*

The Commissioner concedes that the ALJ's first and third reasons were error. Doc. 16 at 8. As to the ALJ's second reason, the Commissioner addresses none of Plaintiff's arguments (Doc. 12 at 11-18), and does not argue that the medical evidence was inconsistent with Dr. Janikowski's opinion as the ALJ found, nor that affirming would be

---

[2] Some of Dr. Janikowski's handwritten comments or specific recommendations are illegible. The Court also notes that the ALJ cited Exhibits 29F and 30F. Both exhibits contain the same July 19, 2016 opinion by Dr. Janikowski. A.R. 1324-30.

- 5 -

proper. Rather, the Commissioner states that the ALJ provided "some good reasons for discounting the opinion, but asks the Court to remand for the ALJ to reweigh Dr. Janikowski's opinion. Doc. 16 at 1, 8-9. Later in its credit-as-true rule analysis, the Commissioner concedes under the first step that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Janikowski's opinion. *Id.* at 9. The Court interprets the Commissioner's position as conceding that the ALJ erred in all reasons for discrediting Dr. Janikowski, and therefore need not address Plaintiff's arguments.

### B. Evaluation of Plaintiff's Symptom Testimony.

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptoms she has alleged, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Id.* (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

At the hearing before the ALJ, Plaintiff testified to the following. *See* A.R. 50-74. On a typical day, she rates her pain at about a seven on a one-to-ten scale. A.R. 53. Plaintiff experiences constant neck pain that travels into her shoulders, back, knee, and foot, and causes numbness and tingling in her arms and hands. A.R. 50-51. She has broken both feet more than once and experiences constant pain from those injuries. A.R. 51. She also experiences back pain and fatigue which cause her to hunch over when she sits and walks. A.R. 52-53. Even hunched, Plaintiff can sit for only thirty minutes without needing to stand or change positions. A.R. 68. An injection in Plaintiff's lower back only helped her pain for a few days. A.R. 57.

Plaintiff is blind in her right eye, and she uses an unprescribed cane to help her walk. A.R. 56-58. Walking is difficult. She can stand for only ten to fifteen minutes at a time and walk less than a block without stopping. A.R. 66-67. She has difficulty with twisting, bending, squatting, and other truncal movements. A.R. 69. Plaintiff has problems using her hands, grasping objects, buttoning her shirts, and working zippers. A.R. 61. Lifting a gallon of milk, or more than eight pounds, is difficult. A.R. 67. Carpal tunnel surgery helped "quite a bit," but did not alleviate her arm and hand pain completely. A.R. 51.

Plaintiff's anxiety and depression affect her daily life, often causing her to become upset over minor issues and interactions with others. A.R. 62. She has difficulty with her memory, including remembering words, concentrating, and focusing on her thoughts and tasks. A.R. 63. She takes medications for pain, depression, and anxiety. A.R. 53-54.

Plaintiff wakes three to seven times during the night to use the restroom, and sometimes cannot make it to the bathroom because of her pain. A.R. 64. Due to pain and depression, Plaintiff struggles to get dressed and do her hair, and usually does not leave her home. A.R. 64. Plaintiff does dishes and laundry, dusts, sometimes vacuums, and grocery shops, but she must use a wheelchair or lean on a grocery cart because she cannot walk far without support. A.R. 64. She does not participate in any social groups or activities. *Id.* She does not believe that her pain and ailments would allow her to work fulltime. A.R. 71.

The ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. A.R. 19. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. A.R. 19. The ALJ gave three reasons for discrediting her symptom testimony: (1) objective medical and clinical findings did not support disabling limitations, and treating and examining source reports were inconsistent with the frequency and severity of Plaintiff's alleged pain; (2) Plaintiff's reported daily activities were consistent with the ALJ's assessment that Plaintiff could function at a higher level than alleged; and

(3) Plaintiff's alleged symptoms were inconsistent with the consultative examination report by Dr. Efren Cano. A.R. 18-19.[3]

### 1. Symptom Testimony Not Supported by the Record.

#### a. Standard.

"Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing 42 U.S.C. § 423(d)(5)(A); *Bunnell v. Sullivan*, 947 F.2d 341, 344-45 (9th Cir. 1991)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted); *see Smolen*, 80 F.3d at 1282 ("The claimant need not produce objective medical evidence of the pain . . . itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.") (citing *Bunnell*, 947 F.2d at 345-48); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the objective medical evidence does not substantiate your statements."); *see also* SSR 95-5p, 1995 WL 670415, at *1 (Oct. 31, 1995) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms.").

Unless the ALJ "makes a finding of malingering based on affirmative evidence thereof, [she] may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen*, 80 F.3d at 1283-84). "'General findings

---

[3] The ALJ found Plaintiff's polysubstance dependence was not material to her disability determination and did not use it discredit her symptom testimony. A.R. 15.

are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Reddick*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834); *see Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (same).

### b. Discussion.

The ALJ discussed several objective findings that supported minimal limitations and Plaintiff's "subjective allegations of [the] progression of her symptoms during the period at issue," but which supported the ALJ's determined RFC when "considered in context with examination results." A.R. 17-18. The ALJ referred to cervical spine x-rays from May 19, 2014, showing some evidence of anterior fusion and moderate disc space narrowing. A.R. 17 (citing Exhibit 26F/10). The ALJ noted:

> However, the impression was that there was no fracture, the anterior fusion instrumentation had intact hardware, and there was expected alignment. Imaging of the claimant's lumbar spine showed advanced degenerative changes with grade 1 anterior spondylothesis, mild canal stenosis, moderate to marked central canal stenosis, and moderate to marked foraminal stenosis. (Exhibit 26F/1). Lumbar spine x-ray showed mild compression fracture of the L4 with marked generalized disc space narrowing. (Exhibit 26F/2). While these spinal impairments undoubtedly affect the claimant's ability to perform work activities, her limitations are accounted for in the above residual functional capacity assessment, namely the light exertional level and restricted range of postural activities.

A.R. 17.

The ALJ's cited exhibit, Exhibit 26F, includes lumbar spine and full body bone MRI examinations and radiology reports on Plaintiff's knees, wrists, and right shoulder from the same medical center where Dr. Janikowski worked, spanning from May 19, 2014 to June 22, 2016. *See* A.R. 1077-1100. Results concerning Plaintiff's back and spine revealed advanced degenerative changes of lumbar discs, mild central canal stenosis at L2-L3, moderate to marked central stenosis at L3-L4, and mild to moderate compression deformity of L4 with approximate 50% loss of vertebral height (A.R. 1077); slight curve of the lumbar spine, marked disc space narrowing, some sclerosis at the superior endplate suggesting a remote fracture, generalized degenerative changes of facet joints, some osteoarthritis at the inferior aspects of both SI joints, and generalized osteopenia but no instability during

flexion-extension maneuvers (A.R. 1078). The ALJ recited these findings without specifying how the evidence discredited Plaintiff's testimony. A.R. 17-18.

The Court does not find the ALJ's discussion of the evidence pertaining to Plaintiff's back and spine to be clear and convincing reasons for rejecting Plaintiff's symptom testimony. The ALJ acknowledged three times that medical findings supported more than minimal limitations, that Plaintiff's spinal impairments undoubtedly affected her ability to perform work activities, and that the evidence supported the alleged progression of Plaintiff's symptoms. A.R. 18-19. Plaintiff testified to constant neck and back pain that causes her to sit and walk hunched and to change positions every thirty minutes. A.R. 52-68. Indeed, at the hearing the ALJ observed Plaintiff "look[ing] really fatigued" and "bending over so much" that she often lost sight of most of Plaintiff's face. A.R. 52.

The ALJ also cited entire Exhibits 1F, 2F, 3F, 4F, 7F, 14F, 22F, and 31F, stating that Plaintiff's "muscle strength and tone assessments showed that [her] paraspinal muscle strength was within normal limits and paraspinal muscle tone was within normal limits." A.R. 18. And cited entire exhibits 1F, 2F, 3F, 4F, 10F, 14F, 20F, 21F, 22F, 26F, 28F, and 32F, stating that "review of reports made by treating and examining sources showed that . . . the claimant was routinely without acute distress or not in any distress," even though she testified to constant neck pain. A.R. 19. These exhibits total over 500 pages, and the ALJ cited no specific pages supporting her assertions. The Court is "constrained to review the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), and "may not take a general finding . . . and comb the administrative record to find specific conflicts" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). The ALJ's general findings, citing entire lengthy exhibits with no specificity, are not clear and convincing reasons to reject Plaintiff's symptom testimony. *See id.*; *Lester*, 81 F.3d at 834.

The ALJ's cited results pertaining to Plaintiff's upper extremities revealed narrowing at the radiocarpal joint space and osteoporotic bony structures in Plaintiff's left wrist (A.R. 1090); mild narrowing at the first metacarpocarpal joint and the radiocarpal joint space consistent with degenerative osteoarthritis, and osteoporotic bony structures in

Plaintiff's right wrist (A.R. 1091); and osteopenia of visualized bony structures in Plaintiff's right shoulder, with degenerative cyst-like change noted in greater tuberosity, but no fracture line, bony abnormality, or tissue calcification (A.R. 1092). The ALJ also cited Exhibit 23F and its "mildly abnormal findings" in concluding that a light exertional level for lifting and carrying requirements accounted for any of Plaintiff's limitations in her upper extremities. A.R. 18. That exhibit includes complaints of pain, carpal tunnel syndrome, acquired trigger finger, hand pain, paresthesia, numbness, and difficulty grasping (A.R. 1018, 1021, 1024); diagnoses for left carpal tunnel syndrome and left ring finger trigger digit (A.R. 1008); and findings of mild osteoarthritic changes, no acute fracture, or dislocation in the left hand (A.R. 1011); evidence of mild left and moderate right carpal tunnel syndrome affecting sensory and motor components; myofascial pain involving paracervical, upper trapezius, and levator scapulae muscles; reduced amplitude in left median motor, left ulnar sensory, and right ulnar sensory nerves; prolonged distal onset latency in right median motor nerve and decreased conduction velocity; prolonged distal peak latency, reduced amplitude, and decreased conduction velocity in the right median sensory nerve (A.R. 1012); and positive Tinel's sign at the median nerve, carpal compression, and Phalen's test in the right hand (A.R. 1025).

Plaintiff had left carpal tunnel surgery in May 2016. A.R. 1008. She testified that it helped "quite a bit" but did not alleviate all hand and arm pain (A.R. 51), and that she continued to have problems using her hands, grasping objects, buttoning her shirts, working zippers, or lifting a gallon of milk (A.R. 61, 67). The ALJ cited only findings predating Plaintiff's surgery – yet those same findings were sufficient for doctors to recommend that Plaintiff undergo surgery on her left hand. The ALJ cited no other specific findings contradicting Plaintiff's testimony that she continues to have pain in her left hand. Rather, the ALJ found that Plaintiff's residual functional capacity includes full grip, contrary to Plaintiff's testimony and findings in the cited exhibit. Given the ALJ's selective record citations, general conclusions, and failure to discuss these other findings supporting

Plaintiff's testimony, the Court cannot conclude that the ALJ provided clear and convincing reasons to discredit Plaintiff's testimony.

As to Plaintiff's lower extremities, the ALJ's cited findings showed normal alignment, bone mineral density, and soft tissues in Plaintiff's right foot, with post-traumatic or degenerative changes at the medial malleolus, mild degenerative changes at the DIP and PIP joints and great toe MTP joint, but no fracture, destructive lesion, or subluxation (A.R. 1083); no fracture or dislocation in the knees, with notedly well-preserved joint spaces in Plaintiff's right knee (A.R. 1088-89). The ALJ also cited "EMG and NCV findings [that] showed peripheral neuropathy" in Plaintiff's right leg, and an x-ray of Plaintiff's right foot that "only showed mild degenerative changes." A.R. 18 (citing A.R. 878). But the cited exhibit, 20F, also showed complaints of arthritis in the left knee and ongoing pain (A.R. 859, 865); trigger points posterior to the great trochanteric prominence on left hip, with trigger points at the medial fat pad proximal to the joint line, mild diffuse tenderness, and painful range of motion at the left knee (A.R. 862); trigger points at the right knee, moderate painful range of motion at the right hip, moderate swelling, tenderness, and painful range of motion at the right knee, and diffuse tenderness, mild diffuse swelling, and moderate to severe painful range of motion at the right ankle and foot (*id.*). The ALJ addressed none of these findings.

Plaintiff testified that she has broken both feet several times and experiences constant pain from those injuries. A.R. 51. Walking, bending, and squatting are all difficult, and Plaintiff uses a cane to walk. A.R. 56-58, 69. She testified that she can stand for only ten to fifteen minutes at a time and walk less than a block without stopping. A.R. 66-67. Acknowledging some limitations in Plaintiff's lower extremities, the ALJ provided for restricted range of postural activities and avoidance of uneven terrain. A.R. 18. But the ALJ cited only the normal and mild findings in Exhibit 20F, failing to address evidence that supported the extent of Plaintiff's alleged symptoms. Given the ALJ's lack of specific findings as to the whole record on Plaintiff's lower extremities – even within the ALJ's cited exhibit – the Court cannot find these cursory statements to be clear and convincing

reasons for discrediting Plaintiff's testimony. *See Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

### 2. Inconsistency with Plaintiff's Statements.

"In evaluating the claimant's testimony . . . the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). "[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113 (citations omitted).

Finding that Plaintiff is capable of doing past relevant work as a personal attendant, front desk clerk, and casino reservation clerk, the ALJ stated that Plaintiff's residual functional capacity "was supported by the claimant's reported activities of daily living, including performing personal care, preparing meals, and performing household chores." A.R. 19 (citing Exhibit 17E); *see* A.R. 21. The ALJ concluded that Plaintiff's "reported activities were consistent with the assessment that [she] could function at a higher level than alleged." A.R. 19.

Exhibit 17E is Plaintiff's Function Report, in which she reported the following. *See* A.R. 315-22. Plaintiff cares for outdoor-cats, which does not involve cleaning a litter box. A.R. 65, 316. She takes only showers because she cannot easily get in and out of her tub. A.R. 316. She cannot sleep without her medication and uses a pillbox to remember to take her medications because she forgets sometimes. A.R. 316-17. She prepares easy meals, like frozen dinners, hamburger helper, or sandwiches, and cannot cook big dinners because it is too painful to stand in the kitchen for a long time. A.R. 317. Around the house Plaintiff dusts, vacuums, does laundry, and waters the yard. But these tasks take her "much longer than [they] should" or she will just not "do as good of a job." Her family reminds her to do these chores if "it gets too bad." *Id.* She cannot bend down to do yard work. A.R. 318.

Plaintiff does not drive because of difficulty seeing and travels by riding with others. She shops only for food and pet food about once a week. *Id.* She is not able to count change, pay bills, or handle a savings account. *Id.* She watches television as a hobby, and has difficulty crafting because of her carpal tunnel and poor eyesight. She participates in no activities other than attending doctor visits up to three times a week or talking on the phone. A.R. 319. She reports not handling stress well and being "scared to death" about her vision or falling down. A.R. 21.

Plaintiff's reported daily activities of watching television, talking on the phone, preparing easy meals, struggling to complete housework, and attending doctor appointments hardly demonstrate that Plaintiff "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff remains in her house unless attending an appointment. She does household chores slowly or incompletely, or will let the tasks build up until reminded by her family. She described no other personal care routine than showering. "[T]he mere fact [that Plaintiff] has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability," especially given the minimal level of reported activities and the manner in which Plaintiff completes them – with difficulty or in such a way to avoid pain. *Id.* (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). This was not a clear and convincing reason to discredit Plaintiff's testimony.

### 3. Inconsistent with Examining Physician's Report.

"[I]n evaluating a claimant's subjective complaints of pain [or other symptoms], the adjudicator must give full consideration to all of the available evidence, medical and other, that reflects on the impairment and any attendant limitations of function." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). "Such other evidence includes the claimant's prior work record, her daily activities, and observations by treating and examining physicians and third parties about the claimant's symptoms and their effects." *Id.*

The ALJ found her assessment to be supported by the consultative examination report of Dr. Efren Cano. A.R. 19. Dr. Cano diagnosed Plaintiff with unspecified decreased vision, carpal tunnel syndrome, unspecified memory problems, and neck pain. A.R. 555. The ALJ noted that:

> Dr. Cano opined that there were no conditions that had or would impose any limitations for 12 continuous months. Dr. Cano's assessment was consistent with examination results, which were remarkably normal or within normal range. However, a more restrictive residual functional capacity was adopted based on updated treatment records and the combined effects of the claimant's impairments. Accordingly, partial weight was assigned to the opinion provided by Dr. Cano.

A.R. 19.

The ALJ found Dr. Cano's report discrediting because it confirmed her interpretation of the medical evidence. But as discussed, the ALJ cited no clear and convincing reasons in the medical record that discredit Plaintiff's symptom testimony. And Plaintiff's hearing testimony and function report support her limitations. The ALJ recognized, at least in part, that Plaintiff experiences more restrictions than Dr. Cano's report reflected. Yet the ALJ failed to explain why Dr. Cano's report was credible as to its other findings. The ALJ's partial adoption of Dr. Cano's report and general summary of his conclusions fails to identify specific ways in which Plaintiff was malingering or which specific portions of her testimony Dr. Cano's report discredits. *See Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). Given the other evidence corroborating Plaintiff's testimony, and the ALJ's lack of specific credibility findings, the Court finds this is not a clear and convincing reason to discredit Plaintiff's testimony. *Cf. Smolen*, 80 F.3d at 1285.

**V.     Remand.**

The ALJ erred in discrediting Plaintiff's symptom testimony and the opinion of Dr. Janikowski. Plaintiff contends that, crediting this evidence as true, the Court must remand

for an award of benefits. Doc. 12 at 22. The Commissioner counters that the appropriate remedy is a remand for further proceedings. Doc. 16 at 9.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> The three-part analysis . . . is known as the "credit-as-true" rule. First, we ask whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, we determine whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted).

The first step is satisfied. The ALJ failed to provide legally sufficient reasons for discounting the opinion of Dr. Janikowski and Plaintiff's testimony.

Applying step two, the Court concludes that outstanding issues must be resolved before a disability determination can be made. Although the ALJ erred in discounting Plaintiff's testimony and the medical opinion of Dr. Janikowski, the record contains conflicting medical opinions by Dr. Janikowksi and Dr. Cano and mixed findings about the extent of Plaintiff's limitations. The mixed and inconsistent nature of the medical evidence in the record creates doubt as to Plaintiff's disability, and further administrative proceedings to weigh these conflicting opinions and findings would be useful. This case therefore does not present the rare circumstance in which an immediate award of benefits might be appropriate.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this action.

Dated this 16th day of April, 2019.

David G. Campbell
Senior United States District Judge